UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Valley Mining, LLC,　　　　　　　　　　　　　　Civil No. 06-3667 (JRT/FLN)

    Plaintiff

v.　　　　　　　　　　　　　　　　　　　　　　**REPORT AND
　　　　　　　　　　　　　　　　　　　　　　　RECOMMENDATION**

United States of America, et al.,

    Defendants.

---

**THIS MATTER** is before the undersigned United States Magistrate Judge on the United States's Motion for Summary Judgment (ECF No. 165). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends that the United States's motion for summary judgment be **GRANTED**.

## I.　BACKGROUND

**A.　Procedural History**

In June 2006, the United States filed a notice of levy on Plaintiff Valley Mining, LLC, seeking to levy upon distributions from Valley Mining to Defendant ARC of Minnesota, L.P. ("ARC"). ARC receives periodic membership distributions as a named shareholder of Valley Mining. Compl. ¶¶ 4, 5. The United States claims that ARC is the alter ego or nominee of taxpayers Gerald Christenson and Anita Christenson. Compl. ¶ 3, ECF No. 1. The United States filed the levy in an attempt to collect unpaid tax assessments against the Christensons. Compl. ¶ 3, Ex. A.

In August 2006, Valley Mining filed this interpleader action, pursuant to 28 U.S.C. § 2410 in Minnesota State District Court, and the United States timely removed to federal court. Compl.

and Notice of Removal, ECF No. 1. Valley Mining named as defendants the United States, ARC, Gerald Christenson and Anita Christenson, and asked the Court to determine the proper claimant to the membership distributions. Compl. at 3. This Court ordered that all funds distributed from Valley Mining and earmarked for ARC be held by the Clerk of Court in an interest bearing account pending the outcome of this case. ECF No. 19.

ARC asserted a cross-claim against the United States for wrongful levy pursuant to 28 U.S.C. § 2410 and 26 U.S.C. § 7426. ARC Answer, ECF No. 13. The United States filed an answer claiming an interest in the funds on the basis that ARC is the alter ego of the Christensons, so federal tax liens against the Christensons attach to distributions ostensibly owed by Valley Mining to ARC. United States Answer, ECF No. 5.

Gerald and Anita Christenson filed a Chapter 7 bankruptcy petition while this case was pending. ECF No. 125. On January 27, 2012, David Velde, the Bankruptcy Trustee for the Christenson's estate in the Christensons' Chapter 7 Bankruptcy case, intervened in this action. ECF No. 156. Mr. Velde asserts in his answer that the bankruptcy court determined that ARC is the nominee or alter ego of the debtors, and that the assets of ARC are property of the bankruptcy estate. Answer of David Velde ¶ 9, ECF No. 157. He asserts that he entered into a stipulation with the United States in the bankruptcy action by which the United States is entitled to funds owing to ARC deposited with this Court before May 15, 2008, the date of filing of the bankruptcy proceeding, and David Velde as Bankruptcy Trustee is entitled to all funds deposited with this Court after May 15, 2008. *Id.* ¶¶ 12-13; Stipulation, ECF No. 50-1 at 9-11.

The Court entered judgment by default against Anita and Gerald Christenson on March 2, 2012. The United States now seeks summary judgment against ARC and an order distributing the

interpleaded funds in accordance with the agreement reached by the United States and the Bankruptcy Trustee. David Velde filed a reply supporting the motion of the United States. ECF No. 172.

Counsel for ARC filed a response in opposition to the United States's motion for summary judgment, which states in its entirety that it opposes summary judgment for "the reasons set forth in the attached Exhibit A." ECF No. 173. Exhibit A consists of a two page statement written by Gerald Christenson that accuses the IRS of "trickery, fraud and deceit" and states that "status is the only relevant issue" and that new supporting evidence is being delivered to the IRS. ECF No. 173, Ex. A. The response does not contest any of the facts presented by the United States in support of its motion for summary judgment. Neither does it respond to the legal arguments made by the United States with regard to whether the Christensons fraudulently transferred their interest in Valley Mining to ARC or whether ARC was the alter ego or nominee of the Christensons.[1]

Following the reply brief by the United States, counsel for ARC filed an "Amended Answer in Opposition," which has attached an additional statement by Gerald Christenson and 73 pages of attached documents. ECF No. 179. The Court disregards this filing as either an untimely amendment to ARC's responsive memorandum, or an unsolicited surreply. The Court notes, however, that in this response, ARC again does not challenge any of the facts or legal arguments presented by the United States. Rather, Mr. Christenson argues that he is not a taxpayer within the meaning of the Internal Revenue Code and that the collection of taxes is unconstitutional.

**B.     Facts**

---

[1] Gerald Christenson filed the same two page statement as a separate "Answer in Opposition." ECF No. 176. He also filed a separate declaration with attached exhibits. ECF No. 182. The Court disregards both filings, as Mr. Christenson is no longer a party to this suit.

The United States presents the following facts in support of its motion for summary judgment. ARC has not challenged or disputed these facts.

Valley Mining was created as a partnership in 1984, with each partner contributing his interest in the mineral rights in a lime rock quarry. Ex. 122.[2] Gerald Christenson was one of the original partners of Valley Mining. *Id.* In 1987 or 1989, Gerald Christenson transferred his interest in Valley Mining to his wife, Anita Christenson, for no consideration.[3] Ex. 8 at 234:7-20; Ex.123 and127. The Christensons created ARC as a limited partnership on June 3, 1997. ARC Answer ¶ 9. Anita Christenson then assigned her interest in Valley Mining to ARC for no consideration, as her "capital contribution." Ex. 7 at 138:5-21.

The certificate of limited partnership identifies the general partner of ARC as "Anita R. Christenson, Trustee of the Anita R. Christenson Trust Agreement." ARC Answer Ex. A, ECF No. 13-1 at 2. However, Anita Christenson testified that she had never heard of the Anita R. Christenson Trust until this litigation. Ex. 13 at 60:12-25. She further stated that Gerald opened all checks addressed to ARC because it was "his business." Ex. 11 at 68:23-69:12.

When the Christensons formed ARC, they received a letter from attorney William S. White explaining "the basics of operating a limited partnership." Ex. 131 at 1. The letter informs the Christensons that certain steps must be taken immediately, including ordering letterhead, invoices or other business stationary to reflect the full name of the partnership and maintaining a bank checking account in the partnership's name. *Id.* at 5. Attorney White cautions that "he cannot

---

[2]All citations to exhibits refer to the United States's exhibits in support of their motion for summary judgment, in the docket at ECF Numbers 168 and 169.

[3]Gerald Christenson executed documents assigning his "entire partnership interest" in Valley Mining to Anita Christenson on both February 21, 1987 and January 2, 1989.

4

overemphasize the importance of maintaining the formal integrity of your new partnership entity, which is a separate person from yourself." *Id.*

Gerald Christenson conceded in his deposition that he did not follow through with the steps mentioned by White as necessary to maintain ARC as an entity separate from himself. Ex. 10 at 161:7-21. He stated that he conducted the affairs of ARC in such a way that there was no distinction between himself personally and ARC. Ex. 10 at 199:19-200:1-3. ARC did not continuously maintain a checking account in its own name. *Id.* at 98:3-11. When ARC didn't have a bank account of its own, Gerald deposited checks payable to ARC into checking accounts held by other entities he controlled. Ex. 7 at 79:23-82:10 and 92:14-23. From the creation of ARC in 1997 until 2006, all of the income that ARC received from Valley Mining went to Gerald and Anita Christenson. Snyder Ex. 7 at 101:10-15. Gerald Christenson admitted that ARC "was basically something that [he] utilized to keep funds and expend funds as [he] saw fit." Snyder Ex. 10 at 140:9-15.

Gerald Christenson testified that the only investments he made in his own name, or in the name of an entity he controlled, that made a profit over the last ten years were Valley Mining, OAC Limited Partnership, Shady Oak and Gemco. Ex. 10 at 143:14-144:24. In addition to their interest in Valley Mining, the Christensons transferred their interest in OAC Limitid Partnership and their interest in Shady Oak to ARC. Ex. 8 at 182:16-183:7 and 291:25; Ex. 13 at 122:7-25 and 158:12-19. Gerald could not recall who holds title to his Gemco stock. Ex. 10 at 186:14-187:7.

At the time of Gerald Christenson's deposition in 2008, he and his wife held no business or property interests in their own names. Ex. 8 at 184:14-16. Rather, the Christensons created roughly 30 entities over the years that Gerald Christenson stated were for "liability protection" and "estate

5

preservation." Ex. 10 at 216:7-217:9. Gerald testified that checks made out to the various entities were for his benefit. Ex. 10 at 126:19-127:6 (discussion about Christenson receiving funds in the name of GOC Irrevocable Trust, HIS Trust, Heartland Enterprises, and Oakridge Investments). From 2000 through the filing of this case, Gerald Christenson did not maintain a checking account in his own name, instead using checking accounts in the names of the entities he controlled. Ex. 10 at 92:3-93:6. He "possibly," but not definitely, had a checking account in his name prior to 2000. *Id.* at 100:6-8. Gerald agreed during a deposition that all of the entities he controlled, including ARC, were "just part of us" and that things should have been done differently. Ex. 10 at 133:14-134:2.

In January of 1997, shortly before the creation of ARC, the Christensons received a letter from the IRS notifying them that the IRS intended to assess tax liabilities, penalties, and interest in excess of $400,000 for the 1991 through 1993 tax years. Ex. 8 at 243:20-25; Ex. 56. The Christensons late filed their 1991 and 1993 income tax returns in July 1993 and May 1995 respectively. Additionally, Gerald did not file 1995 returns, and late filed his 1996 and 1997 income tax returns in 2007, his 1998 and 1999 income tax returns in 2005, and his 2000 through 2002 income tax returns in 2006. Anita Christenson late filed her 1995 through 1999 income tax returns in 2007, and late filed her 2001 and 2003 income tax returns in 2006. Wallin Declaration ¶ 6. ARC only filed income tax returns for tax years 2006 and 2007, and both returns were filed after the commencement of this case in 2007. Wallin Decl. ¶ 3.

As of May 24, 2012, the Christensons owe the United States $7,851,908.23 in tax assessments, interest and penalties. Wallin Decl. ¶ 5 and Ex.1. The United States filed nominee liens against ARC in an attempt to collect unpaid tax assessments against the Christensons, and in

June 2006 filed a notice of levy on Valley Mining seeking to levy upon distributions from Valley Mining ostensibly owed to ARC. Compl. ¶ 3.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B. The United States is entitled to summary judgment, because its federal tax liens attach to the distributions from Valley Mining to ARC.

The United States seeks summary judgment in its favor and a holding that its federal tax liens against Gerald and Anita Christenson attach to the interpleaded funds, which consist of payments from Valley Mining ostensibly due to ARC. The United States argues that its liens attach to the interpleaded funds under two theories: (1) because ARC is the alter ego of the Christensons and (2)

7

because the Christensons fraudulently transferred their interest in Valley Mining to ARC. The United States argues that under either theory, the funds are subject to a federal tax levy as the property of the Christensons.

Internal Revenue Code § 6321 states that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. To determine whether a particular asset is subject to a federal tax lien, courts engage in a two-part analysis. Courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property'" under § 6321. *Drye v. United States*, 528 U.S. 49, 58 (1999).

Considering the second step first, the language of § 6321 is broad, and "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Drye*, 528 U.S. at 56. The Supreme Court has held that the property of an entity that is found under state law to be the "alter ego" of a taxpayer may be levied to satisfy the debts of the taxpayer. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977) ("If petitioner was Norman's alter ego, . . . [i]t would follow that the Service could properly regard petitioner's assets as Norman's property subject to the lien under § 6321."); *United States v. Scherping*, 187 F.3d 796, 801-804 (8th Cir. 1999) (holding that trust was taxpayer's alter ego and federal tax lien attached to trust's property). Similarly, the Eighth Circuit has held that property found under state law to have been fraudulently transferred by a taxpayer was subject to a federal tax lien. *Scherping*, 187 F.3d at 804-806. The Court now turns to the first step of the analysis to determine whether the funds constitute the

property of the Christensons under Minnesota law, under either the alter ego or fraudulent conveyance theories.

   1.   **ARC is the alter ego of the Christensons.**

The United States argues that ARC is the alter ego of the Christensons, and that distributions to ARC are therefore subject to the tax lien. The Minnesota Supreme Court held in *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979) that where a shareholder "did not treat the corporation as a separate legal entity, he should not be entitled to its protection against personal liability." Since *Victoria Elevator*, Minnesota courts have employed a two-step analysis in determining whether an entity is the alter ego of an individual. In the first step, courts consider the relationship between the individual and the entity, including such factors as the "failure to observe corporate formalities, nonpayment of dividends, ... siphoning of funds [by the individual], ... absence of ... records [for the entity], and the existence of [the entity] as merely a facade for [the individual]." *Scherping*, 187 F.3d at 802 (citing *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn. 1982)). In the second step, courts consider the relationship between the entity and the party that seeks to disregard it. *Id.* Disregard of the corporate entity requires "that there be an element of injustice or fundamental unfairness." *Victoria Elevator*, 283 N.W.2d at 512. "Proof of strict common law fraud is not required, but, rather, evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner must be presented." *White v. Jorgenson*, 322 N.W.2d at 608.

Considering the relationship between the Christensons and ARC, the Court finds many of the factors indicating that ARC and the Christensons are one and the same. Gerald Christenson stated in his deposition that he did not follow through with the steps suggested by his attorney to

9

maintain the formal existence of ARC separate from himself, and that he conducted the affairs of ARC in such a way that there was no distinction between himself personally and ARC. ARC did not continuously maintain a checking account in its own name. When ARC didn't have a bank account of its own, Gerald deposited checks payable to ARC into checking accounts held by other entities he controlled. From the creation of ARC until 2006, all of the income that ARC received from Valley Mining went to Gerald and Anita Christenson. Gerald Christenson admitted that ARC "was basically something that [he] utilized to keep funds and expend funds as [he] saw fit."

Finally, while the certificate of limited partnership identifies "Anita R. Christenson, Trustee of the Anita R. Christenson Trust Agreement" as the general partner of ARC, Anita Christenson testified that she had never heard of the Anita R. Christenson Trust until this litigation and that Gerald opened all checks addressed to ARC because it was "his business." Based on the undisputed facts, ARC served only as a facade for the Christensons themselves.

Turning to the second step of the analysis, the Court finds that ARC has operated in a fraudulent manner toward the United States, the party that seeks to disregard it, by attempting to shelter the Christensons' income from taxation. The Christensons created ARC and transferred their interest in Valley Mining to ARC several months after receiving a letter notifying them that the IRS intended to assess tax liabilities, penalties, and interest in excess of $400,000. The transfer to ARC, along with other transfers to roughly 30 different entities established by Gerald Christenson, rendered the Christensons without sufficient assets in their own names to pay the IRS's assessments. At the time of Gerald Christenson's deposition in 2008, he and his wife held no business or property interests in their own names. Gerald Christenson conceded in his deposition that all of the various entities he created and controlled were "just part of [himself and his wife]." Based on the

10

undisputed evidence, the Court finds that ARC acted fraudulently toward the United States, as it served to shelter the Christensons' income from taxation.

The Court holds that ARC was the alter ego of the Christensons and that it is therefore appropriate to reverse pierce the corporate veil and treat the assets of ARC as the assets of the Christensons for purposes of the federal tax lien..

    **2.    The Christensons Fraudulently Transferred their Interest in Valley Mining to ARC.**

The United States also asks the Court to recognize the validity of their tax levy on the theory that the transfer of the Christensons' interest in Valley Mining to ARC should be set aside as a fraudulent conveyance. Whether a conveyance may be set aside as fraudulent must be determined in accordance with Minnesota law. *Scherping*, 187 F.3d at 804. Minnesota Statutes § 513.44(a) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > . . .
> > >
> > > (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The United States contends that the transfer was fraudulent under Minn. Stat. § 513.44(a)(2) because the Christensons transferred their interest in Valley Mining to ARC without receiving a reasonably equivalent value in exchange and because the transfer rendered them unable to pay their income tax liabilities. It is undisputed that both Gerald Christenson's transfer of his interest in

11

Valley mining to Anita Christenson and her subsequent transfer of that interest to ARC were made in exchange for no consideration. The transfer to ARC was also made at a time when the Christensons believed or reasonably should have believed that they would incur debts, in the form of their federal tax liability, beyond their ability to pay. In January of 1997, the Christensons received a letter from the IRS notifying them that the IRS intended to assess tax liabilities, penalties, and interest in excess of $400,000 for the 1991 through 1993 tax years. Anita Christenson then transferred her interest in Valley Mining to ARC in June of 1997. As described above, this transfer, along with other transfers to roughly 30 different entities established by Gerald Christenson, rendered the Christensons without sufficient assets in their own names to pay the IRS's assessments. In fact, by the time of this litigation, the Christensons held no assets in their own names.

There is no genuine issue of material fact as to whether the Christensons received "a reasonably equivalent value" when they transferred their interest in Valley Mining to ARC or whether they believed or reasonably should have believed that they would incur tax liabilities beyond their ability to pay as they become due. The Court finds that the transfer of the Christensons' interest in Valley Mining to ARC was a fraudulent transfer under Minn. Stat. § 513.44(a)(2)(ii).

The United States also contends that the transfer was fraudulent under Minn. Stat. § 513.44(a)(1), because it was made with the actual intent to hinder, delay, or defraud their creditors. Actual intent may not be presumed, but may be established through the examination of circumstantial evidence or "badges of fraud." Under Minnesota law, the creditor bears the initial burden of demonstrating sufficient badges of fraud, at which point the burden of production shifts to the party contending that a fraudulent conveyance had not occurred. *See Argonaut Insurance Co.*

*v. Cooper*, 395 N.W.2d 119, 121-122 (Minn.Ct.App. 1986) (applying Minn. Stat. § 513.26, which was repealed in 1987 and replaced with Minn. Stat. § 513.44). The "badges of fraud" for determining actual intent include whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. § 513.44(b).

The United States has shown sufficient badges of fraud to merit a finding that the transfer of the Christensons' interest in Valley Mining to ARC was made with the actual intent to hinder the collection of taxes by the United States. ARC is an "insider" of the Christensons and the Christensons maintained control over all assets of ARC, as described above. The transfer was made shortly after the Christensons were notified that the IRS was soon going to assess over $400,000 in taxes. No consideration was received by the Christensons in exchange for the transfer. Finally, as described above, this was one of many similar transfers by which the Christensons held their personal assets in the name of entities formed and controlled by them, with the result that they held no assets in their own names. The Christensons have not come forward with any evidence that this transfer was not fraudulent. There is no genuine issue of material fact as to whether the conveyance of the Christensons' shares in Valley Mining was fraudulent under Minn. Stat. § 513.44(a)(1).

The United States is entitled to summary judgment and a holding that their tax lien attaches

13

to the distributions from Valley Mining ostensibly owing to ARC, because ARC is the alter ego of the Christensons and because the Christensons' interest in Valley Mining was fraudulently transferred to ARC.

**C.      The United States is entitled to summary judgment on ARC's wrongful levy claim.**

ARC asserts a cross-claim against the United States for wrongful levy pursuant to 26 U.S.C. § 7426. In order to sustain their claim, ARC must show that the United States has wrongfully levied on its property. As described above, because ARC is the alter ego of the Christensons, and because the transfer of the Christensons' interest in Valley Mining to ARC was a fraudulent conveyance, ARC's interest in Valley Mining constitutes property of the Christensons which is properly subject to tax liens under Internal Revenue Code § 6321. The IRS's tax liens attach to the distributions from Valley Mining to ARC, and the IRS's levy was proper. The United States is entitled to summary judgment on ARC's cross-claim.

### III.     RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The United States's Motion for Summary Judgment (ECF No. 165) be **GRANTED;**
2. The Court declare that the United States' federal tax liens attach to the interpleaded funds;
3. Judgment be entered in favor of the United States on ARC's wrongful levy cross-claim;
4. The Court direct the Clerk to distribute the interpleaded funds in accordance with

the stipulation between the United States and Trustee Velde, which calls for distribution of all funds deposited before May 15, 2008 to the United States, along with corresponding interest, and distribution of all funds deposited on or after May 15, 2008 to David Velde, as Bankruptcy Trustee, along with corresponding interest; and

4. **JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 28, 2012            *s/ Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 15, 2012**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.